FILED
2010 Sep-21 PM 03:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| CONNIE AGEE, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 5:09-CV-01260-LSC |
| | ] | |
| MICHAEL ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

# MEMORANDUM OF OPINION

## I. Introduction.

The claimant, Connie Agee ("Agee" or "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB"). Agee timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Agee was forty-six years old at the time of the Administrative Law Judge's ("ALJ") decision, and she has at least a high school education. (Tr.

at 16.) Her past work experience includes employment as a waitress. (*Id.*) Agee claims that she became disabled on January 29, 2005, due to cervical, lumbar, and knee pain.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. § 404.1520(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 404.1520(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R.

pt. 404, subpt. P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Agee meets the nondisability requirements for a period of disability and DIB and was insured through September 30, 2010. (Tr. at 10.) He further

determined that Agee has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.* at 12.) According to the ALJ, Plaintiff's "residuals of knee surgery, lower back pain secondary to degenerative disc disease of the lumbar spine[,] and obesity" are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id.* at 14.) The ALJ determined that Agee has the residual functional capacity to perform sedentary work, provided Plaintiff "is restricted from squatting, sustained kneeling, ladder climbing, crawling, walking or standing for more than 8 hours per day. She needs a sit/stand option and needs to change positions as necessary. She also needs to wear a knee brace at work and climb no more than 1 flight of stairs during the day." (*Id.*)

Using the testimony of a vocational expert, the ALJ determined that Agee would not be able to perform her past relevant work, but considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Agee can perform. (Tr. at 16.) The ALJ concluded his

findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 29, 2005[,] through the date of this decision." (*Id*. at 17.)

II. Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*,

793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "[d]espite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

Plaintiff alleges that the ALJ's decision should be reversed or remanded because (1) the ALJ erroneously rejected Plaintiff's subjective complaints of pain, and (2) the ALJ's hypothetical questions to the vocational expert were deficient.

A. Pain Standard.

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about

the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is 'not enough to enable [the district court . . . ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'" *Id.* (internal quotations omitted).

In this case, the ALJ found that Agee's medically-determinable impairments could reasonably be expected to produce the alleged pain symptoms, but he did not believe that the evidence of record confirmed the severity of Plaintiff's alleged pain. (Tr. at 14.) The ALJ noted that after surgery for anterior cervical disectomy and fusion in December 2007, Agee reported that her arm and shoulder pain had improved. (*Id.* at 15.) Her treating doctor recorded that her neck condition also continued to improve, and Plaintiff complained primarily about back, leg, and hip pain. Following another surgery, Plaintiff reported that her leg symptoms had resolved. Examinations showed good strength in both of her legs and negative straight

leg raising bilaterally. (*Id.*) The ALJ observed that another treating physician, Dr. Murphy, determined in May 2007 that Agee was capable of working for eight hours with certain restrictions. (*Id.*) The ALJ also thought it was important that Plaintiff testified to daily activities that conflicted with her claims of disabling neck and back pain. Notably, Agee testified that she made her husband's lunch, picked up around the house, put clothes in the washer, cooked supper, took the dog for walks, washed dishes, and drove her car. The ALJ pointed out that these activities all "require use of the neck and back on a regular basis." (*Id.*)

It appears to the Court that the ALJ specifically addressed Plaintiff's allegations of pain in his opinion, and he provided explicit and reasonable reasons for rejecting her testimony. The objective medical and other evidence supports the ALJ's conclusion that Plaintiff's condition did not cause disabling limitations and shows that she could perform a reduced range of sedentary work.

B. Hypothetical Questions.

"In order for a [vocational expert]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which

comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). If the Commissioner demonstrates that there is work available in significant numbers in the national economy that the claimant can perform, "the claimant must prove she is unable to perform those jobs in order to be found disabled." *Id*. at 1228. Plaintiff contends that the ALJ's hypothetical questions to the vocational expert were erroneous and incomplete because they did not (1) include specific references to pain severity; (2) take into account the side effects of Agee's medication; or (3) address the environmental restrictions imposed by Dr. Murphy, the pain specialist.

While the ALJ did not specifically reference pain in his hypothetical questions, it is clear to the Court that the hypothetical questions took Agee's pain into consideration. The hypothetical questions excluded or limited squatting, kneeling, ladder climbing, crawling, walking, standing, and climbing stairs, and the ALJ provided that Plaintiff should be allowed to wear a knee brace while walking. *See Williams v. Barnhart*, 140 Fed. Appx. 932, 937 (11th Cir. 2005). Moreover, Plaintiff has not shown that her pain prevents her from performing the jobs identified by the vocational expert.

*Jones*, 190 F.3d at 1228. As outlined above, the ALJ properly rejected Plaintiff's testimony regarding the extent of her pain.

The side effects of Agee's medications were also properly addressed by the ALJ. In his first hypothetical question, the ALJ specified: "And again because of her medications she should not work around hazardous machinery, unprotected heights, or large bodies of water." (Tr. at 43.) In response to the entire first hypothetical, the vocational expert identified jobs Plaintiff could perform, including assembler, hand packager, and production inspector. (*Id*. at 42-43.) While the ALJ did not reference medications in the subsequent hypothetical questions, the vocational expert answered with the same jobs—although the number of such jobs available for sedentary (versus light) workers was reduced. The Court also finds that the side effects of Agee's medications, like her pain, were implicitly addressed in the exclusions and limitations on squatting, kneeling, ladder climbing, crawling, walking, standing, and climbing stairs. In addition, Plaintiff has failed to establish that her medications prevent her from performing the jobs identified by the vocational expert. *Jones*, 190 F.3d at 1228.

Finally, Plaintiff argues that the ALJ improperly ignored the environmental restrictions imposed by Dr. Murphy. The ALJ gave the opinion of Dr. Murphy "significant weight," because of his years of examination and treatment of Agee. (Tr. at 15.) However, opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(e).

Dr. Murphy restricted Plaintiff in terms of walking, sitting, lifting, pushing and pulling arm or foot controls, climbing, balancing, stooping, kneeling, crouching, and crawling. He also stated that Agee could not work in extreme temperatures, humidity, vibrations, fumes, dust, or around moving mechanical parts. (Tr. at 706-07.) The ALJ included some of Dr. Murphy's restrictions in his hypothetical questions. While every one of Dr. Murphy's environmental restrictions was not specified, Social Security Ruling 96-9p explains that "[i]n general, few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme

heat, wetness, humidity, vibration, or unusual hazards. . . . Even a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base." 61 Fed. Reg. 34478-01, 34483 (July 2, 1996). Furthermore, Plaintiff has not established that any of Dr. Murphy's environmental restrictions prevents her from performing the jobs identified by the vocational expert. Because Plaintiff has failed to meet her burden of showing that she is unable to perform the identified jobs, the ALJ's decision must be upheld. *Jones*, 190 F.3d at 1228.

IV. Conclusion.

Because the Court finds that the Commissioner's final decision applies the proper legal standards and is supported by substantial evidence, the decision of the Commissioner of the Social Security Administration will be affirmed by separate order.

Done this 21st day of September 2010.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297